[Civ. No. 268. Fourth Appellate District.—September 29, 1930.]

BERTHA IRELAND, Respondent, v. CHARLES S. MARSDEN, Appellant.

Sweet & Plank, Harry P. Sweet and Franklin A. Plank for Appellant.

McAdoo, Neblett, O'Connor & Clagett for Respondent.

WARMER, J., *pro tem.*—The facts are not in dispute. They may be briefly stated as follows: That respondent and her husband were residents of Grand Forks, North Dakota. Dr. Marsden, the appellant, and his family were formerly residents of the same city and had been neighbors of the respondent and her husband for many years. Respondent and her husband were visiting in California. On Thursday preceding February 5, 1927, respondent went to La Jolla to visit her old neighbors and friends for a day or two. There was to be a picnic of the former residents of North Dakota, to be held in Sycamore Grove, Los Angeles, February 5, 1927, and by prearrangement Dr. Marsden and family and respondent were to attend this picnic. On the morning of February 5, 1927, Dr. Marsden, Mrs. Marsden, their son Paul and the respondent left La Jolla by automobile for Sycamore Grove. Dr. Marsden was driving. Paul was sitting in the front seat. Mrs. Marsden and the respondent occupied the rear seat. The automobile was a Willys-Knight sedan, practically new. The route chosen was a main paved highway. An accident occurred in which Mrs. Ireland was injured. The place of the accident was at Irvine, near Santa Ana, California, on a paved highway about twenty or thirty rods from a grade crossing of the highway and railroad. The circumstances at the time of the accident were, according to respondent's testimony, as follows:

"Q. While on this trip on the 5th of February, 1927, did you receive an injury? A. I did. Q. Just tell us in your own words, Mrs. Ireland, the facts and circumstances concerning the injury and how it took place in so far as you know. A. I was thrown to the top of the car. Q. About how long after you left La Jolla did this take place as far as you remember? A. I think about 10:30 o'clock A. M. Q. You had been driving about an hour and a half? A. I think so. Q. Do you know the road on which you were driving at the time of this accident? A. I don't know the place definitely. It was south of Santa Ana. Q. Do you

know the name of the road on which the defendant was driving? A. I don't know its name—main traveled thoroughfare. Q. Mrs. Ireland, this highway is the main traveled highway as you understand it between Santa Ana and San Diego, California? A. Yes. Q. At any time did you hear the defendant make any statement or did he say at any time as to about the location of the road where this incident occurred in which you were injured? A. I heard him speak of it as Irvine. Q. You are not familiar with the country, and do not know of your own knowledge where the accident took place? A. No. Q. Now, Mrs. Ireland, before the injury, where were you sitting in the car? A. In the rear seat, at the driver's right. Q. Who, if anyone, was sitting with you? A. Mrs. Marsden. Q. Wife of Dr. Marsden, the defendant? A. Yes. Q. Where was the boy Paul sitting? A. Beside his father. Q. And the Doctor was driving? A. Yes. Q. You say you were thrown to the top of the car? A. I was. Q. Was that a sudden incident—took place suddenly? A. Yes, no warning. Q. There was no warning of any kind? A. No. Q. What else occurred at the time, Mrs. Ireland, relative to either of the other passengers in the car? A. Mrs. Marsden said she had hit the top. Q. Did you see Mrs. Marsden thrown? A. I did not. Q. What if anything did Mrs. Marsden say immediately following your being thrown to the top of the car?

"Mr. Bangs: I object to the last question as incompetent, irrelevant and immaterial and also move to strike out the answer made by witness previous to this question as to the remark made by Mrs. Marsden.

"A. 'Why the bump,' she addressed her husband as 'Doctor Charles, why the bump'.

"Mr. Sweet: We urge the same objections as stated there.

"The Court: Objection overruled.

"Mr. O'Connor (continues reading deposition, as follows):

"Q. What, if anything, did the doctor say? A. 'Why, did you feel it, we didn't.' Q. Did Mrs. Marsden make any reply? A. Yes, she said she struck her head, or hurt her neck. Q. What more, if anything, was said by either of the parties immediately following? A. Mrs. Marsden asked me if I had hit the top. Q. What did you say? A. I could not reply. She said, 'Doctor, I believe Mrs. Ireland is hurt.'

They asked me repeatedly if I was hurt, to which I did not reply. Q. Why? A. Because I couldn't. Q. Was the car still in motion? A. No, by that time the car was stopped.''

The testimony of the appellant as to the same circumstances is as follows:

"A. We left La Jolla. Q. About what time of day? A. We left La Jolla probably around, between eight and nine o'clock, I don't remember exactly. Q. That was in the morning? A. Yes, sir, in the morning. Q. And what kind of a car, Doctor? A. Willys-Knight sedan. Q. That is a four-door sedan? A. Yes sir. Q. The car was owned by yourself, Doctor? A. Yes sir. Q. And who was in the car? A. Mrs. Ireland and Mrs. Marsden, and one of my boys. Q. And yourself? A. Yes sir. Q. That was Paul, was it not, your son Paul? A. Yes sir. Q. And who operated the car? A. I did. Q. All the way, Doctor, on the trip? A. Yes sir. Q. And did anything happen out of the ordinary, on the way up, Doctor? A. Well, as we approached Irvine, the women in the back seat got a throw. Mrs. Marsden called my attention to it and asked me to stop. I did not feel anything, and I looked around and saw that they were apparently disturbed and so, instead of stopping, I was just about to cross the railroad track there at Irvine and I made the remark that I would cross the tracks and pull out there at the oil station where I stopped. Mrs. Ireland evidently was hurt, and I helped her to get out of the rear seat, and she sat up, and I helped to straighten her up a little bit and after a few minutes she said she felt pretty well. I said to her, 'You had better ride in the front seat for the rest of the journey,' when after a few minutes she said she felt pretty well, and we continued on to Pasadena, where we ate our dinner, stayed for a little while, and after leaving there, we went over to Sycamore Grove, to attend the picnic we were going to. Q. And this road, Doctor, just prior to entering Irvine, California, that runs north and south, does it? A. I think so. Q. About north and south? A. About north and south. Q. And what kind of a surface was that? A. Well it was a concrete pavement. Q. Do you know whether or not there was any hole in that pavement? A. I could not find any. Q. And about how far south of the turn, as you came across the tracks there, into Irvine, did

this accident you testify to, happen? A. Well, I don't know as to that, it might have been anywhere between twenty and forty rods, probably not forty rods—maybe twenty or thirty rods, I don't know. Q. And what called your attention to the fact that something had happened to the car? A. Mrs. Marsden. Q. What did she say to you? A. Well,.she made some exclamation of surprise, and I think she said that Mrs. Ireland was hurt, or something to that effect. Q. Did she say something like this: 'Why the bump, Charles,' something to that effect? A. Why, I don't recall. Q. You don't remember that? A. I don't think she said that—she never called me that in my life. Q. Do you think she said anything at all about a bump? A. Well, she may have—she may have asked why the bump, but she did not put it that way. Q. Do you recall in what language she said it, Doctor? A. No, I do not recall what she said at the time. Q. Now then, after you crossed the track and stopped the car, in what position did you find Mrs. Ireland? A. Mrs. Ireland was bent forward, kind of doubled up. Q. Her head down, do you mean by that, Doctor? A. Yes, sir. Q. How close was her head to her knees? A. Oh, not close— she was in a sitting position, only stooped a little bit.''

There being no claim of excessive damages, the injuries need not be stated further than to say the most serious one was a compression fracture of the twelfth dorsal vertebrae, the amount of compression being very marked.

Under the above statement of facts there is no showing of negligence, unless the doctrine of *res ipsa loquitur* is applicable. ■ The rule as to when such a doctrine is applicable is stated as follows:

''When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by the defendant, that the accident arose from want of care.'' (*Judson* v. *Giant Powder Co.*, 107 Cal. 549 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020].)

This rule has been uniformly followed in this state.

The first question presented in this case is, do the facts proved (admitted) bring the case within this rule? Many of

the older cases holding the rule applicable are reviewed by our Supreme Court in *Judson* v. *Giant Powder Co., supra,* and need not be again reviewed here. The automobile has given rise to many new conditions and the courts have passed on a number of circumstances arising from the operation of automobiles where the rule has been applied. The review of some of them seems necessary to the understanding and a determination of this appeal. It is conceded by the appellant that the doctrine applies to guest cases in the same manner as in cases of common carriers; further, that the automobile was under the control of the defendant. In *Brown* v. *Davis,* 84 Cal. App. 180 [257 Pac. 877], plaintiff's wife, deceased, and others were riding in an automobile at the time of the accident, which occurred late at night. Mrs. Brown was riding as an invited guest. The defendant testified that immediately before the accident "there was a car coming . . . on the other side and what made me pull out of the road, the car was coming on the other side of the road with no lights"; that he thereupon pulled off the graveled part of the road and as he attempted to pull back again the right rear wheel collapsed and his automobile overturned; the wheel had broken off at the hub; that before turning off the graveled road he was traveling at the rate of twenty-five to thirty miles per hour, and that he continued at that speed until after the accident. The court held in such action the doctrine of *res ipsa loquitur* is applicable notwithstanding the deceased was an invited guest. (See, also, *Crooks* v. *White,* 107 Cal. App. 304 [290 Pac. 497].) The general rule is settled that the overturning of a vehicle operated by a common carrier raises an inference of negligence under the doctrine of *res ipsa loquitur.* (*Seney* v. *Pickwick Stages,* 82 Cal. App. 226 [255 Pac. 279].) In *Leitert* v. *Pickwick Stages, N. D.,* 68 Cal. App. 504 [229 Pac. 889, 890], the court in applying the doctrine of *res ipsa loquitur* said that "an automobile in perfect mechanical condition which the driver is having no difficulty in operating, running upon a paved highway with ample room, does not suddenly leave the highway and run 200 feet into the bottom of a gulch if it is being operated with due and proper care".

In *Mansfield* v. *Pickwick Stages, N. D.,* 68 Cal. App. 507 [229 Pac. 890], the court says: "Proof of the derailment

of a train or of an automobile leaving the highway, and going into the gulch, or other similar accident, calls for an explanation by the defendant, or .a possible inference of negligence upon its part.''

In *Morris* v. *Morris,* 84 Cal. App. 599 [258 Pac. 616], plaintiff was injured while riding in an automobile of the defendant. Defendant's car came to an intersection of highways. Plaintiff was riding in the rear seat of the car, which was being driven in a westerly direction, the intention of the parties being to turn south. Plaintiff was unable to explain the cause of the accident. She testified that when the automobile entered the intersection its course was directly toward an electric light pole which was situated between the curb and sidewalk, at the southwest corner of the intersection; when the driver attempted to turn south, the speed of the car suddenly increased and a collision with the· pole occurred, causing the damage alleged. She. further testified that as the automobile approached the intersection she looked to the south along the avenue and saw no automobiles approaching from that direction. The court held that the doctrine of *res ipsa loquitur* applied.

The case of *Pontecorvo* v. *Clark,* 95 Cal. App. 162 [272 Pac. 591], cited by appellant, is not in conflict with the views hereinbefore expressed. In that case the court instructed the jury that the doctrine of *res ipsa loquitur* applied, and the defendant offered evidence to rebut the inference of negligence as tending to establish on the part of the defendant lack of any failure to have the equipment and track properly constructed and inspected, further tending to prove that there was no negligence in the operation of the said equipment and track on the part of defendant. The cause was thus properly presented to the jury for its determination as to whether or not the inference raised under the doctrine of *res ipsa loquitur* had been overcome by the defendant.

*Scellers* v. *Universal Service Everywhere,* 68 Cal. App. 252 [228 Pac. 879], relied on by appellant, is a case where the plaintiff left a Cadillac automobile at a washing place of business, returned a couple of hours afterward and was .told that it was broken. Judgment was recovered against the owner of the washing rack. Respondents relied upon the

doctrine of *res ipsa loquitur* to sustain the judgment. The facts disclose that respondent maintained a raised rack upon which automobiles were driven up a twenty-foot incline to a level surface, which was about forty inches above the level; that respondent drove the automobile about ten blocks to appellant's place of business; that he had purchased the same in the fall of 1927, had driven it about 20,000 miles, had it inspected and gone over monthly, and when left at the rack it was apparently in good condition. Experts testified that high motor speed could cause the damage done. Witnesses testified that different things could have caused the damage, such as defective parts, or that crystallization of metal might have started the breaking. Neither respondent nor any witness knew of the condition of the parts. Immediately before the time that the car was left at the washing rack witness Carr, an employee of appellant, testified that the machine stood about twenty-five feet from the incline; that he put it in low gear, drove it to the top of the incline, whereupon he heard a click or dull thud or bang, and immediately shut off the switch and threw it out of gear and the car was then pushed on the rack and washed. He never had it in high gear, did not race motor, clutch did not slip, and he was an experienced driver of Cadillac automobiles; that he did not do anything unusual in the manageing and handling of the automobile and did not know what was the matter with the motor when it stopped. Under such a statement of facts the appellate court held that the doctrine of *res ipsa loquitur* did not apply. The evidence not only failed to show the want of care, but it affirmatively establishes without attempted contradiction that the conditions and the maintenance of the part or parts of the respondent's car which broke, were matters with which appellant could have had no possible concern. The court there, in other words, held that while the thing was under the management of the defendant, yet under no theory could the defendant have had a duty to know of the condition of the car, and without such a duty the doctrine of *res ipsa loquitur* could not apply. The statement of the rule itself presupposes a knowledge or a duty to know what caused the accident. Further, the testimony discloses that the breaking, within the machine itself, might have been due to

one of a number of mechanical defects, concerning which the defendant had no knowledge, or duty to know. Hence the case must fall within that class of cases where the cause of the accident is conjecture or surmise, to which the doctrine of *res ipsa loquitur* does not apply. However, the facts in this case are so dissimilar to the facts in the case at bar, that it is not in point.

*Steele* v. *Pacific Elec. Ry. Co.*, 168 Cal. 375 [143 Pac. 718], relied upon by defendant, is a case where the plaintiff was injured while getting off a street-car, and claimed the car had suddenly started before she had time to get off. The court said: "It is not necessary for a passenger to prove the cause of collision, derailment, or other accident. It is sufficient for him to prove it occurred, and such proof makes a *prima facie* case of negligence on the part of the carrier, which throws upon it the duty of explaining how it occurred and showing that it was the result of causes beyond its control, and so relieving it from responsibility. The wisdom of the rule is apparent."

In *Michener* v. *Hutton et al.*, 203 Cal. 604 [59 A. L. R. 480, 265 Pac. 238], the court again reviews at some length the cases involving the doctrine of *res ipsa loquitur*, citing many cases, and again affirms the rule stated in *Judson* v. *Giant Powder Co.*, *supra*, saying: But "to justify the application of this doctrine (*res ipsa loquitur*) in any case the circumstances of the accident must be such as unexplained afford reasonable evidence of want of care in a respect for which the defendant is liable in the particular action".

In the case of *Spring* v. *McCabe*, 53 Cal. App. 330 [200 Pac. 41], the court declares the rule of degree of care in a guest case to be "ordinary care". This is conceded to be the rule in the case at bar. (See *Brown* v. *Davis*, *supra*, and cases there cited.) ██ If the doctrine of *res ipsa loquitur* applies, it gives rise to an inference of negligence on the part of the defendant, which inference is sufficient to establish a *prima facie* case, in the absence of an explanation on the part of the defendant, and in order for the explanation on the part of the defendant to be sufficient to justify a verdict or findings in his favor, such evidence must meet and balance the inference, or preponderate against the inference raised by the application of the doctrine of *res ipsa loquitur*.

"In this class of cases a *prima facie* case of negligence is made out by proving that the passenger was injured while being carried as such, and this being done, the carrier is called upon to rebut or overcome a presumption of negligence that follows from the mere fact of injury by showing, if it can, the exercise of that degree of care which will excuse it under the rule of law above stated. Such a presumption is evidence in the case, but it has no greater or different effect than the testimony of witnesses, and in no degree changes the rule as to burden of proof, viz., the burden of producing a preponderance of evidence. That burden does not shift from side to side on the trial of a case, but constantly remains with the party having the affirmative of the issue, who in this case is the plaintiff. All that is required of the defendant is to produce evidence sufficient to offset the effect of a plaintiff's showing. He is not required to offset it by a preponderance of the evidence. (Citing cases.) . . . The doctrine of '*res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff'. (Citing cases.)" (*Scarborough* v. *Urgo et al.,* 191 Cal. 341, 346, 347 [216 Pac. 584, 586].)

In the instant case it is admitted that the appellant was in the management of the automobile; that an accident occurred; that respondent was a guest riding in the rear seat of the automobile; that appellant was driving along a paved highway; that for some unexplained reason the rear end of the automobile bounced suddenly, and as a result of such bounce respondent was thrown, catapulted, from the seat, to and against the top of the automobile with some considerable force, and then fell back on the seat in a position described as "bent or jack-knifed." Appellant contends that such an accident is one that in the ordinary course of things does happen, and that anyone riding in the rear seat of an automobile must be expected to be jolted, even when the driver is using proper care. With this contention we cannot agree. We know that there are a million and more automobiles hastening over the highways of our state. We know several millions of people occupy the rear seats of such automobiles. We do not believe anyone really expects the occupants of the rear seats of these automobiles to be

thrown or catapulted against the top of the car, and more particularly with such force that as a result of their impact their backs are broken either by the force of the impact or by falling back on the seat or on the floor of the machine. While unquestionably a person riding in a machine, either in the front or rear seat, may be conscious of the movement of the car caused, for instance, by a rough stretch in the road, and such movement might be called jolting, and still remain in the class of the ordinary or expected incidents of travel, yet when the jolting becomes so severe that as a result thereof persons are catapulted through space and thrown against the top of cars, human experience itself, without legal principle, declares them to be not ordinary, not to be expected, a happening that would not occur in the ordinary course of things, if the driver of the car had used proper care. We doubt not that many persons riding in the rear seat, or front seat for that matter, have been thrown from the seat against the top of machines; neither do we doubt that in every instance where persons have been so thrown, where no explanation is made, the driver has not been using due care. ■ The highway is within his view, the machine is in his control and management. Nothing appearing to be unusual or unlawful to the occupant of the rear seat, no duty can be placed upon him.

We therefore conclude that the doctrine of *res ipsa loquitur* is peculiarly applicable in the instant case. [5] The appellant contends that if the doctrine of *res ipsa loquitur* applies the inference of negligence has been met by the defendant's testimony. This claim makes it necessary to examine the evidence on behalf of the defendant. So far as the same is directed to explanation of the accident herein, it may be reduced to the final conclusion, "I do not know." Does the fact that the defendant and all of his witnesses did not know the cause of the accident explain the occurrence so as to avoid the inference of negligence? Assume there was a deep depression in the highway and the defendant failed to observe it; there was no evidence as to its existence, and an accident occurred because the driver proceeded across the same recklessly, would the answer of "I do not know" furnish any basis of proof of care? Certainly not. Assuming that there was a hole in the highway of

considerable depth, or an obstruction on the highway not seen by the driver, and an accident occurred because the driver proceeded without due care, would the answer "I do not know" form a basis of proof of care? Certainly not. "I do not know," does not explain anything, throws no light upon what causes an accident; is not explanation. Under the doctrine of *res ipsa loquitur* defendant must explain in some degree, that degree being sufficient to rebut the inference of negligence, which comes to the aid of the plaintiff's cause under the doctrine of *res ipsa loquitur.* (*Scarborough* v. *Urgo et al., supra.*) However, if there should be some evidence that could be deemed an explanation, then the whole case was one for the determination of the trial court as to whether or not the explanation was sufficient to balance or overcome the inference raised under the doctrine of *res ipsa loquitur.* If the finding of fact is based upon a reasonable inference, it is not within the power of this court to set it aside, any more than it is within its power to set aside any other finding supported by evidence.

"It is the peculiar and exclusive province of the trial court or trial jury in the first instance to make such finding of fact, and it is the especial right of every litigant to have all facts so determined by the court or jury, this court sitting only to review the findings and being empowered to set them aside as a matter of law only when not sustained by adequate evidence." (*Ryder* v. *Bamberger,* 172 Cal. 791, 799 [158 Pac. 753, 756].)

Judgment affirmed.

Marks, Acting P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 27, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 24, 1930.