[Civ. No. 8325. First Appellate District, Division One.—December 28, 1932.]

FRANK M. LEJEUNE, Respondent, v. GENERAL PETROLEUM CORPORATION OF CALIFORNIA (a Corporation), Appellant.

A. L. Weil, W. L. Appleford and Martin J. Weil for Appellant.

Ford & Johnson for Respondent.

THE COURT.—With certain exceptions and additional observations which will hereinafter appear the court adopts the opinion of Justice *pro tem.* Lamberson originally filed in this case:

"The plaintiff was employed as an able seaman on the tank steamer Lebec, owned and operated by the defendant. Because of injuries received while the ship was weighing anchor off the town of Davenport, Santa Cruz county, this action for the recovery of damages has been brought against defendant under the provisions of the Jones Act (46 U. S. C. A., sec. 688), which reads as follows: 'Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . . ' The Federal Employers' Liability Act, to which reference is made in the preceding act (45 U. S. C. A., sec. 51), reads in part as follows: ' . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.'

"For about two weeks prior to the date of the accident which is the subject of the action the plaintiff had been employed on the Lebec. The ship about February 15, 1931, and after a general overhauling at San Pedro, loaded with fuel oil and proceeded to Davenport, where it was the custom and was necessary to anchor in the open sea about one mile from the shore, where the ship picked up a pipeline leading to tanks on shore which were used for storage, and discharged its cargo through such pipe-line. The ship was moored to three buoys, and had out the port and starboard anchors. For the performance of the task of hoisting anchor two men, one of whom was the plaintiff, were assigned to the chain locker for the purpose of stowing the anchor chain as it came in. The chain locker was a compartment located in the forecastle head immediately below the winch, hereafter described, and was about 12 feet by 5 feet in dimensions and 15 feet in depth. The anchor chain consists of links each about 14 inches long, 7 inches wide and weighing about 25 pounds. It was hoisted by means of a winch, to which was affixed a device known as a 'wild cat', which operated on the principle of a friction

clutch, and which, when meshed with the revolving part of the winch, drew the chain in by means of 'dogs', which engaged the open space in the links of the anchor chain. The motive power which operated the winch was steam. From the winch the chain fell through a pipe into the chain locker. As a safety device there was first a pawl or forelock built into the deck between the winch and the opening in the ship's side through which the anchor chain was drawn. The forelock was so designed that in the event of reversal of the chain the 'dog' on the forelock would fall into the open part of the link and prevent the chain from running further.

"Because of the manner in which the chain was constructed it was agreed that about 20 inches of the chain might run out before the pawl would engage. As an additional safety factor there was upon the winch a band or compressor brake, which was operated by means of a handle, and which was designed for use in the event of failure of the hoisting machinery or of the forelock to engage the chain while running out.

"On the day of the accident the boatswain was assigned to the duty of turning the steam into the winch and off, that is, attending the throttle. An able seaman was stationed at the starboard compressor brake for the purpose of applying it in the event of an emergency, while the first mate stood in the forecastle head in front of the winch and superintended the operation, watching at the same time the slackening away of the port anchor chain which was being slowly paid out as the starboard anchor was being drawn in. The master of the ship was on the bridge about 175 feet away from the winch.

"A heavy sea had been running during all of the morning and part of the preceding day, causing the lightened ship to rise as much as 8 to 12 feet with the swell. During the process of hoisting the anchor and after the larger part of the chain had been drawn in the ship rose with the swell, and the chain suddenly stopped running in, and reversed its direction. At that time the chain had been stowed to a height of about 4 feet below the top of the locker room, and there was a space left between the pile of ·chain and the walls. The plaintiff and his companion, who testified that he was about 3 feet from plaintiff, were standing on

the pile of chain, it being necessary to stoop over in order to work, and the plaintiff was shoving the chain over with his shoulder. As the chain suddenly ceased coming in plaintiff's companion jumped to safety, but the plaintiff remained where he was and by the reversal of the chain was thrown some distance from the pile, his head striking against some obstacle in the locker room. No serious injury was immediately apparent, although there was some bleeding from the nose, and the plaintiff with the assistance of the boatswain stowed the remainder of the chain. He continued with his various duties, although complaining of pains in his head, until after his arrival in San Pedro the following day. After some persuasion he went to a hospital, and later a paralysis of certain members on the left side of his body developed resulting from damage to the brain. Plaintiff also claimed that his left eye and ear were injured.

"After the boatswain had taken the place of the seaman who had been assisting the plaintiff, the work of hoisting the anchor was resumed, and it developed that the flukes of the anchor had been broken off, presumably because the anchor had become engaged with or had fouled boulders on the ocean floor. The anchor weighed approximately 9600 pounds. The chain had been paid out to about 540 feet, and the ship when unloaded weighed approximately 10,200 dead weight tons. The starboard anchor was lying at a depth of between 45 and 50 feet. The pilot, who had been taking the ships in and mooring and unmooring them during a period of two years, said that he could put the ship within 40 feet of the same place each time, and that this was the first occasion on which an anchor had fouled.

"The jury returned a verdict in favor of plaintiff for $20,000. No motion for a new trial was made, and the appeal is from the judgment of the court entered upon the verdict.

"Defendant bases its appeal upon the following grounds: that there was no evidence of negligence upon its part but that the injury sustained by plaintiff was due entirely to the fouling of the anchor and the heavy swell of the sea; that the court erred in admitting statements alleged to have been made to the seaman Morris, who had assisted plaintiff in the chain locker at unspecified times prior to

the accident, as to some unspecified defect in the winch; that the court erred in instructing the jury as to the doctrine of *res ipsa loquitur*, the defendant contending that the doctrine is not applicable to the case; and also that the court erred in instructing the jury as to the measure of damages and matters not in issue; and lastly, upon the ground that the damages were excessive. This last point cannot be considered by this court for the well-established reason that such point cannot be raised for the first time on appeal but must be presented to the lower court on motion for a new trial. (*Bate* v. *Jolin,* 206 Cal. 504 [274 Pac. 971].)

"The question as to the sufficiency of the evidence to support the verdict goes hand in hand with the question of the applicability of the doctrine of *res ipsa loquitur.* The testimony of the seaman Forrester, who was attending the starboard compressor brake, was that while the crew were heaving in the anchor 'it slipped down, stopped and *surged out*'; that he immediately put on the brake, 'which is the thing naturally to do'. There is considerable conflict of testimony as to the distance which the chain traveled out of the locker room and over the winch toward the sea. The seaman Morris, who was with plaintiff in the locker room, said that the chain stopped falling down to them; that he immediately jumped away and as he jumped the chain ran out 6 to 12 feet. Witnesses on behalf of defendant testified that it ran back 18 to 20 inches. The court gave the following instruction: 'There is a rule of law known as *res ipsa loquitur* which, translated literally, means, "the thing speaks for itself". This rule defined declares that when the thing which causes injury is shown to be under the management and control of the defendant and the accident is such as in the ordinary course of things does not happen if those who have the management and control use proper care, it affords reasonable evidence, in the absence of explanation from the defendant, that the accident arose from a want of ordinary care.'

"And at the request of the defendant the court gave a further instruction as follows: 'I instruct you that the doctrine of *res ipsa loquitur*, meaning "the thing speaks for itself", to which I have referred in a previous instruction, applies only to the case where the injury was proximately caused by a thing under the control of the defendant,

and defendant offers no evidence showing a lack of negligence. This doctrine, however, does not shift the ultimate burden of proof of negligence from plaintiff to defendant. The defendant need not satisfy you by a preponderance of evidence that it was not negligent, but defendant is merely required to make a showing of want of negligence on its part as to leave the jury unsatisfied whether or not there was negligence on the part of the defendant. When such evidence is offered by the defendant, then if the plaintiff fails to prove to you by a preponderance of evidence that the accident was proximately caused by the negligence of the defendant, your verdict should be against the plaintiff and in favor of the defendant even though the defendant has merely made such a showing as to want of negligence on its part as to leave the jury unsatisfied whether the defendant's negligence was the cause of the injury or not.'

■ ''During the course of the trial plaintiff was permitted to amend his complaint, and by his amendment alleged 'that while plaintiff was engaged in stowing away the anchor chain in the performance of his duties as aforesaid the officers, servants and employees of said defendant herein, and each of them, so carelessly and negligently operated a certain winch and its appliances used to haul in said anchor and to stow said anchor chain, and said winch and its appliances and said anchor chain were, by reason of the negligence of defendants and each of them, so defective and insufficient that said anchor chain, while the same was being hauled in by defendant, its officers, agents and employees as aforesaid, and stowed by plaintiff and another employee in the ''starboard'' chain locker on said steamer ''Lebec'', suddenly reversed and violently proceeded in the opposite direction, and plaintiff was thereby violently thrown from his feet against some portion of said chain locker, and as a proximate result thereof plaintiff sustained great bodily injury', etc.

''These allegations do not attempt to explain or set out the cause of the accident, or the specific manner in which it occurred, but are nothing more than general allegations of negligence. (*Vertson* v. *City of Los Angeles,* 116 Cal. App. 114 [2 Pac. (2d) 411]; *Soto* v. *Spring Valley Water Co.,* 39 Cal. App. 187 [178 Pac. 305]; *Lippert* v. *Pacific Sugar Corporation,* 33 Cal. App. 198 [16 Pac. 810]; *Burke* v. *Dil-*

*lingham,* 84 Cal. App. 736 [258 Pac. 627]; *Seney* v. *Pick-wick Stages,* 82 Cal. App. 226 [255 Pac. 279]; *Atkinson* v. *United Railroads of S. F.,* 71 Cal. App. 82 [234 Pac. 863].)

"In the case of *Cochran* v. *Pittsburgh & L. E. R. Co.,* 31 Fed. (2d) 769, the court, in holding that the doctrine of *res ipsa loquitur* applies in a case governed by the Federal Employers' Liability Act and Safety Appliance Act, said (p. 771): ' . . . the *res* doctrine is a rule of evidence. It is a rule which permits or requires an inference of negligence to be drawn from the fact of an accident plus the circumstances which characterize the accident. It is an evidential inference which will carry a case to the jury, but it is not binding upon the jury; indeed, the weight of the inference is oftentimes for the jury, and a court might not be justified in setting aside a contrary verdict if the jury did not deem the inference sufficient to warrant a verdict in plaintiff's favor. . . . '

"In the case. of *Michener* v. *Hutton,* 203 Cal. 604 [265 Pac. 238, 59 A. L. R. 480], the Supreme Court said (p. 607): 'It is elementary that the maxim *"res ipsa loquitur"* translated means simply "the thing or affair speaks for itself". The courts of this state have long since adopted the rule as expressed in 1 Shearman & Redfield on Negligence, 6th ed., p. 132, viz.: "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care." (*O'Connor* v. *Mennie,* 169 Cal. 217, 223 [146 Pac. 674]; *Valente* v. *Sierra Ry. Co.,* 151 Cal. 534, 538 [91 Pac. 481]; *McCurrie* v. *Southern Pac. Co.,* 122 Cal. 558, 561 [55 Pac. 324]; *Judson* v. *Giant Powder Co.,* 107 Cal. 549, 556 [40 Pac. 1020, 48 Am. St. Rep. 146, 29 L. R. A. 718]; *Dixon* v. *Pluns,* 98 Cal. 384, 388 [33 Pac. 268, 35 Am. St. Rep. 180, 20 L. R. A. 698].) Of course to justify the application of this doctrine in any case the circumstances of the accident must be such as, unexplained, afford reasonable evidence of want of care in a respect for which the defendant is liable in the particular action. . . . One who seeks to recover damages for injuries alleged to have been incurred by reason of another's negli-

gence must establish by a preponderance of the evidence that the latter's negligence has occasioned him loss. However, where the facts are such as to give rise to an inference of negligence from the inherent nature and character of the act causing the injury, or, in other words, to give application to the principle of *res ipsa loquitur*, the burden of proceeding is shifted to the defendant, and if he would escape an adverse finding he must adduce evidence to meet the plaintiff's *prima facie* case.'

''In the case before the court the evidence does not disclose any fault on the part of the plaintiff. He and his companion were in an almost completely enclosed compartment, and could observe nothing but the chain coming through the steel pipe from the winch above, the steam escaping from the cylinder of the engine operating the winch, and the noise of the revolving winch. They were unable to see or observe the manner in which the winch was operated, or the manner in which the other members of the crew were performing their respective duties. The hoisting of the anchor was being done under the immediate direction and supervision of the captain, first mate and boatswain. The machinery was under the immediate direction and control of the officers of the ship. The mooring place was determined by the pilot and was under the control of defendant. The plaintiff could not know whether the pawl or forelock was in proper position, or whether the compressor brake was being watched as it should be. He was compelled to rely upon the proper operation of the machinery by his superiors and the agents of his employer. The hoisting of the anchor was one of the simplest and most common incidents involved in the operation of a ship operating in the trade in which the Lebec was being used. The port captain of the defendant, who piloted the Lebec to its mooring, testified that he had been present when the moorings were first laid; that he had been piloting the ship to that anchorage; mooring it and unmooring it for a period of two years.

''Objection has been made by defendant that the accident was due to the intervention of agencies over which it had no control, in other words, that the direct cause of the reversal of the anchor chain was the fouling of the anchor in a rocky reef coupled with the heavy swell of

the sea. The contention is not sound. The anchorage, as heretofore pointed out, was well known to the agents of the defendant, and in the absence of docking facilities it was the duty of the defendant to be thoroughly informed as to the anchorage. The heavy swell which was on at the time of weighing anchor had been on for many hours before the accident, and was nothing of extraordinary character. No extraordinary results followed in any way. It was an ordinary, natural incident, such as might have been contemplated and anticipated in an open roadstead like the anchorage at Davenport. It was the duty of the officers of the ship to take precautions against the results which might accompany the heaving in of the anchor under such conditions. There appears no intimation on their part that the swell which had been running created hazardous conditions or that it imperiled the vessel in any way. The action of the sea and the effect of the heavy swell were not beyond the foresight of the ship's officers although such conditions might have called for the exercise of more diligent care on their part.

 "Negligence is opposed to diligence or carefulness, and is never absolute or intrinsic, but is always relative to some circumstance of time, place or person. (*Smith* v. *Whittier*, 95 Cal. 279 [30 Pac. 529].) There must be taken into consideration in determining the question of negligence those facts which were known to the person against whom complaint is made, or which by use of proper diligence would have been known to a prudent man in his place.

 "A seaman in the performance of tasks connected with his employment does not assume the risk of negligent acts of those in charge of his ship or their failure to take reasonable precautions. (*States S. S. Co.* v. *Berglann*, 41 Fed. [2d] 456.) The relationship of master and seaman is intimate and peculiar. (*Masjulis* v. *United States etc. Corp.*, 31 Fed. [2d] 284, 285.) He is bound to obey, and there is no assumption of risk, even though the danger may have been obvious to him. (*United States* v. *Boykin*, 49 Fed. [2d] 762; *Panama R. Co.* v. *Johnson*, 289 Fed. 964; *Wychgel* v. *States S. S. Co.*, 135 Or. 475 [296 Pac. 863].)

 "Defendant offered no explanation of the reversal of the chain or of the failure of the winch to hold the chain, or the failure of its employee to apply the brake in time

to prevent the running of the chain. The application of the brake, so far as the evidence discloses, appears to have stopped the chain immediately. The jury had the duty of determining whether the explanation offered by the defendant was satisfactory, and in view of the conflict in the evidence its conclusion cannot be disturbed. In the language of the court in the case of *Soto* v. *Spring Valley Water Co., supra,* 'no reasonable inference seems possible except that this apparatus, had it been properly operated, would have been safe, and that its improper operation was due to the negligence of somebody or to some defect in the machinery undisclosed to and undiscoverable by the deceased, and known, if known to anybody, to the defendant's employees.'

■ As stated, defendant claims that the nature of the accident was not such as to exclude the inference that its cause was the fouling of the anchor, an occurrence which it could not prevent, and that consequently the doctrine does not apply.

It has been said that the doctrine is to be applied only when the nature of the accident itself not only supports the inference of defendant's negligence "but excludes all others". In *Carlsen* v. *Diehl,* 57 Cal. App. 731 [208 Pac. 150], such a rule appears to have been adopted as one of the grounds for the decision. In other cases, namely, *Olson* v. *Whitthorne & Swan,* 203 Cal. 206 [263 Pac. 518, 58 A. L. R. 129], *White* v. *Spreckels,* 10 Cal. App. 287 [101 Pac. 920], *Scellars* v. *Universal Service Everywhere,* 68 Cal. App. 252 [228 Pac. 879], and *Rosenbaum* v. *Luce,* 96 Cal. App. 149 [273 Pac. 862], the above was referred to as the rule; but in each of these cases the instrumentality causing the injury was shown not to have been under the exclusive control of the defendant and the statement was not necessary to the decision. It was held in the *Estate of Wallace,* 64 Cal. App. 107 [220 Pac. 682, 683], that "an inference cannot be said to be established by circumstantial evidence in a civil or criminal case unless the circumstances relied upon are of such a nature and so related to each other that it is the only inference which can fairly and reasonably be drawn therefrom. If other inferences may reasonably be drawn from the facts in evidence the evidence does not support the inference sought to be deduced

from it." In denying a hearing the Supreme Court disapproved this portion of the decision and referred to several cases decided by that court, one being *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123], where it was held that even though all the facts are admitted or uncontradicted, if it appears that either of two inferences may reasonably be drawn from those facts it still remains in the case a question of fact to be determined by the jury, and the verdict thereon cannot be set aside upon the ground that it is not sustained. And such is the general rule (*Hotaling* v. *Hotaling*, 193 Cal. 368 [224 Pac. 455, 56 A. L. R. 734] ; *Miller & Lux, Inc.*, v. *Secara*, 193 Cal. 755 [227 Pac. 171] ). It has been held in several cases involving the doctrine in question that the inference of negligence may arise regardless of the fact that the injury might have been caused by some other agency ; and that where the explanation leaves it doubtful as to whether or not the ultimate cause of the injury was the negligence of the defendant the question is one to be determined by the jury from all the evidence in the case (*Connor* v. *Atchison, T. & S. F. Ry. Co.*, 189 Cal. 1 [207 Pac. 378, 26 A. L. R. 1462] ; *O'Connor* v. *Mennie, supra; Michener* v. *Hutton, supra; Brown* v. *Davis*, 84 Cal. App. 180 [257 Pac. 877] ; *Ireland* v. *Marsden*, 108 Cal. App. 632 [291 Pac. 912] ).

While the doctrine does not shift the burden of proof, it still being incumbent upon the plaintiff to prove defendant's negligence by a preponderance of evidence (*Valente* v. *Sierra Ry. Co.*, 151 Cal. 534 [91 Pac. 481], the inference arising from the accident cannot be disregarded (*Bush* v. *Barnett*, 96 Cal. 202 [31 Pac. 2] ; *Houlsel* v. *Pacific Elec. Ry. Co.*, 167 Cal. 245 [139 Pac. 73, Ann. Cas. 1915C, 665, 51 L. R. A. (N. S.) 1105] ) ; and it is clear from the foregoing cases that even if different inferences might reasonably be drawn from the evidence, where the facts tend to support that of negligence on the part of the defendant the conclusion reached by the jury cannot be disturbed on appeal (2 Cal. Jur., Appeal and Error, sec. 549, p. 934).

Nor does the fact that there was no contradiction of testimony that the machinery was in good order change the rule. While the jury may not arbitrarily disregard the unimpeached testimony of a witness (*Hynes* v. *White*, 47 Cal. App. 549 [190 Pac. 836] ), the presumption being that

he speaks the truth, witnesses may be impeached by methods other than direct contradiction, namely, by the manner in which they testify and the character of their testimony or their motives (Code Civ. Proc., sec. 1847). Here the witnesses were not wholly disinterested, and the determination of their credibility and the weight to be given their testimony was for the jury (*Davis* v. *Judson*, 159 Cal. 121 [113 Pac. 147]; *Caldwell* v. *Weiner*, 203 Cal. 543 [264 Pac. 1100]; *Staples* v. *Hawthorne*, 208 Cal. 578 [283 Pac. 67]).

It is our conclusion that the doctrine was applicable to the facts of this case, and that the trial court properly gave the two instructions of which complaint is made.

 There was received in evidence the deposition of seaman Morris, who was with plaintiff in the chain locker at the time of the accident. Objection was made to testimony contained in such deposition as to conversations between a former first mate of the vessel and Morris, and between Morris and the man who was serving as chief mate at the time of the accident. The witness testified in substance that he stated to these officers that the winch was not working properly and that they replied that they knew it. This testimony was offered and was admissible for the purpose of showing notice to the defendant that the machinery was defective. (*Diller* v. *Northern Cal. Power Co.*, 162 Cal. 531 [123 Pac. 359, Ann. Cas. 1913D, 908].) While it may be said that defendant was not bound by the replies of its servants, this did not render the testimony of the fact of notice inadmissible. Defendant, however, sought to exclude the whole conversation, and no motion to strike the parts of the answers claimed to be objectionable was made. Under such circumstances a motion to strike was proper (*People* v. *Cole*, 141 Cal. 88 [74 Pac. 547]; 26 R. C. L., Trial, sec. 56, pp. 1047, 1048; Wigmore on Evidence, sec. 18), and we cannot say that the court erred in admitting the answers in evidence. Moreover, in view of the other evidence in the case it is not likely that the verdict of the jury turned thereon, and we feel justified in concluding that the ruling resulted in no miscarriage of justice. Nor did this evidence affect the applicability of the doctrine of *res ipsa loquitur*, as it referred to no particular defect in the machinery and left the ultimate cause of the injury still doubtful.

Defendant objected to the following instruction given at the request of the plaintiff: "If you believe from the evidence that at the time of the accident in question plaintiff was suffering from any then existing physical impairment, you are entitled to consider the effect of the injuries sustained in the accident, if any, in aggravation, if any, of the preexisting condition, and award plaintiff damages in an amount compensating him for any additional physical or mental disability, if any, occasioned plaintiff by the accident in question."

The instruction would have been proper under other circumstances (*Campbell* v. *Los Angeles Traction Co.,* 137 Cal. 565 [70 Pac. 624]; *White* v. *Red Mountain Fruit Co.,* 186 Cal. 335 [199 Pac. 318]); but pre-existing injuries were not involved in the present case. Defendant asked plaintiff certain questions regarding claims for former injuries while working on other vessels. The apparent purpose of these questions was to show that plaintiff was a person who was in the habit of making such claims and also a malingerer, and the giving of the instructions may reasonably be ascribed to misapprehension of defendant's object in asking these questions, or to an excess of zeal on the part of plaintiff's counsel. An instruction correct in law but not applicable to the issues involved does not constitute reversible error unless it is clear that the jury was thereby misled (*People* v. *Cochran,* 61 Cal. 548; *Bosqui* v. *Sutro R. R. Co.,* 131 Cal. 390 [63 Pac. 682]; *Estate of Clark,* 180 Cal. 395 [181 Pac. 639]). The jury was elsewhere properly instructed as to the measure of damages, and we are of the opinion that the error complained of was not prejudicial.

The court also instructed that the jury, in arriving at the amount of damage, might consider plaintiff's loss of wages and the impairment of his earning power, if any. Defendant contends that the pleadings make no reference to a loss of wages or earning power, and that the instruction was therefore improper. The complaint alleged that by reason of his injuries plaintiff had been unable to engage in any occupation since the accident, and that his injuries would be permanent. These allegations were sufficient to admit evidence of loss of earning power (*Worden* v. *Central etc. Bldg. Co.,* 182 Cal. 94 [155 Pac. 839]). Plaintiff testified without objection to the wages paid him

by defendant, and that due to his injuries he had not since been employed. The purpose of special allegations respecting damages is to advise the adverse party of such consequences resulting from the injury alleged as are peculiar to the circumstances and conditions of the injured party; and where, as here, it is evident that no prejudice was suffered by the failure to allege the amount of wages lost, and that this fact was established by the evidence, the instruction cannot be said to have been erroneous or prejudicial.

We have examined all the other instructions complained of, and find no error which justifies a reversal of the judgment.

The judgment is affirmed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 23, 1933.