[Civ. No. 8530. Third Dist. Feb. 18, 1955.]

F. W. AWALT, Respondent, v. MERCER, FRASER COMPANY (a Corporation), Appellant.

Woodman, Leddy & Sautter for Appellant.

Earl B. Myers and Thomas Needham for Respondent.

SCHOTTKY, J.—Respondent commenced an action against appellant to recover damages for a loss which respondent alleged resulted from the negligent and careless handling of a crane which respondent had rented to appellant. Respondent was awarded judgment in the sum of $1,112.03 and this appeal is from said judgment.

The principal grounds urged by appellant upon this appeal are the insufficiency of the evidence and that the trial court

did not apply the proper measure of damages. Before discussing these contentions we shall give a brief summary of evidence as shown by the record.

Respondent was in the business of renting out heavy-duty mechanical equipment. Said business was located in Berkeley, California, and was conducted under the name of ''Western Crane Service.'' Appellant was a corporation and was engaged in the construction of some large wooden buildings for a third party in Eureka, California. Appellant rented a lifting crane from respondent at the rate of $925 a month. Respondent furnished an operator and oiler for the machine, but they were to be and were paid by appellant. A crane was sent from Berkeley to Eureka and appellant used it in constructing the buildings from the inception of the work on them. It was used to lift heavy trusses, timbers or sections into place.

Around 1 o'clock p. m. on June 4, 1948, while the crane was being used in holding a truss in place while it was secured to the building, a section of the building collapsed and in so doing the crane was tipped over on its side and damaged. The boom was damaged and in an unusable condition, the 4-ton counterweight was knocked loose, the machine's frame was bent, the cab was damaged and the flywheel housing was broken. Repairs were made to the crane in the shop of appellant and a new boom and flywheel housing were purchased by respondent and sent to Eureka, where they were assembled on the crane. The damaged boom was returned to respondent's yard in Berkeley. The crane was then used in the completion of the building. The total rental period was from April 27, 1948, to September 25, 1948. The operator then returned the crane to Berkeley where it was used in some work. Further repairs were not made until January, 1949, as respondent stated that he had to wait for the insurance money in order to do the necessary repairs. Respondent testified that the extent of damage to the boom rendered it useless to him and that it could not be used in his business. He stated that booms could be repaired, but that he could not use repaired booms in the rental business. Respondent's witness, a Mr. Zaft who was in the welding and repair business, testified that the boom could not be repaired at the time due to a lack of manten steel, that he could not repair it because a special jig was needed to make sure the boom was returned to perfect alignment, that as far as he was concerned the only usable items of the damaged boom to repair

it were its fittings, and that it was not possible to repair the boom to make it as good as it was before the accident.

The cost of the new boom was $1,053.18, which did not include the transportation charge involved in getting it. The flywheel housing apparently cost $58.85. The exact cost of all the other repairs by respondent was not shown by the evidence. Respondent made most of the repairs in his own repair shop and did not keep separate time sheets, vouchers, records, etc., on the repair of this crane, so that at the trial he did not have any substantial evidence of the cost of the repairs, except in regard to the new boom and flywheel housing. Respondent prepared an "estimate" of the necessary repairs which was submitted to his insurance adjuster, but the exact cost of such repairs was not shown; it was testified to by the operator of the crane and respondent that the repairs were made so as to put the crane back into the same condition as it was when it had been rented to the appellant. Respondent did not demand the amount of the repairs from appellant at any time before the complaint was filed, and appellant had no knowledge that respondent sought to recover for such additional repairs until he was notified of respondent's suit.

In relation to the damages, the respondent stated that even if this boom could be repaired he could not use it in his business. Respondent stated that some booms are repaired, but that this one could not be made usable for his business. Mr. Zaft, an expert witness, testified that the boom was not repairable because of a lack of manten steel, that it was impossible to straighten out the twisted portions of this boom, that booms could be repaired, but that in his opinion it was not feasible to repair this boom. Respondent showed that he had spent $1,053.19 in the purchase of a new base section of 30 feet, a 10-foot section and a 5-foot section. The damaged boom was 65 feet in length, that is, a base section of 15 feet, three 10-foot sections, one 5-foot section and a 15-foot tip section. A basic boom consisted of the 15-foot base section and the 15-foot tip section, totaling 30 feet. The total length of a boom is dependent upon the footage of sections used between the base and tip sections. So that the amount recovered by respondent was not what 65 feet of boom would have cost, but only the 45 feet that he replaced with new parts. In other words, 20 feet of boom section was not replaced with new section, but were replaced with some that respondent had on hand; no damages were sought or given

for the damage to such sections. In regard to the flywheel housing, it was so broken that it was not repairable, so that a new one was purchased at the cost of $58.85.

A witness for appellant, its mechanic foreman, testified that the repair made on the crane right after the accident put it in as good condition as it was before the accident, except as to some painting on the cab, and that in his opinion the boom was repairable. This witness only gave the damaged boom a cursory examination and at most his testimony raised a conflict in the evidence as to whether or not the boom was repairable, which conflict was resolved in favor of the respondent and substantiated by the evidence.

The court found, among other things, that appellant was so negligent and careless in the construction of the building that it collapsed and that such collapsing caused the crane to be damaged, such damage being the amount of the judgment; that appellant was a bailee for hire of the crane and had violated the terms of the bailment in that he failed to use ordinary care in the preservation and safety of said equipment while it was in his possession.

The court awarded respondent judgment in the sum of $1,112.03 which was the amount of the cost of the new boom and the flywheel housing. The court denied recovery for the other repairs made by respondent upon the ground of lack of substantial evidence on this point since all of the evidence produced as to this was his "estimate" and not the actual amount of labor and costs expended.

Appellant contends that there is not sufficient evidence to support the findings of the court that there was negligence in the construction of the building and that appellant failed to use ordinary care in the preservation and safety of the crane. ■ We believe the following quotation from the memorandum opinion is amply supported by the evidence and the law:

"While it is true, in the case at bar, that the defendant paid the wages of the operator and oiler, also carried workmen's compensation, the issue here involved centers itself upon the alleged negligence of the defendant. The answer of the defendant does not plead contributory negligence upon the part of the crane operator, Campbell. The real issue is: Was the damage to the bailed article (crane) occasioned by negligence of the defendant? In this connection the evidence of the operator, Campbell, stands uncontradicted. It appeared that while the crane was hoisting a truss for place-

ment in the construction of the building that a section of the building collapsed, thereby overturning and damaging the crane. This construction work was under the control and direction of the defendant and buildings, if properly constructed or being assembled in the process of construction, do not ordinarily collapse. It was not shown that the operator, Campbell, did anything in the handling or operation of the crane to cause the damage which was occasioned. No counter evidence was developed to destroy the inference of negligence. While it may be conceded that the doctrine of 'res ipsa loquitur' sometimes works as a hardship to a defendant who cannot rebut the inference of negligence, the California cases hold that a finding of negligence may be predicated upon the happening of an accident for which no explanation thereof is made by the defendant where it appears that the thing causing the accident is under the management and control of the defendant. The witness, Brown, manager of defendant merely testified he did not know what was the cause of the accident. An 'I don't know' explanation is no explanation at all. (See *Ireland* v. *Marsden*, 108 Cal.App. 632, 643 [291 P. 912].)''

█ Appellant contends that the issue that the building was so negligently and carelessly constructed by appellant that it collapsed and caused the damage to the crane was not properly presented by the pleadings. Respondent's complaint alleged the bailment and that in violation of the bailment agreement to return the crane in good condition the appellant neglected it and through its negligence, carelessness and ill use the crane was damaged. Proof of this would create a prima facie case, which could be defended against by a showing that the damage occurred without negligence on the part of the bailee. Appellant denied the allegations stated above and offered evidence on that subject, so that the issue was properly before the court and the finding was therefore properly within the issues.

█ Appellant contends further that the court incorrectly allowed respondent the cost of replacing the boom sections as damages and complains that it was charged with the replacement cost of a new boom when the one that was damaged was a used one. There was ample evidence to justify the trial court's conclusion that the boom could not be repaired satisfactorily. There was no evidence as to the age or prospective life of the damaged boom produced by either appellant or respondent, nor did the appellant show that the costs to repair

it would have been less than the difference in the value of the boom before and after the accident. There was a conflict in the evidence as to whether or not the boom was repairable and, in granting judgment for respondent in the amount of the new sections, the trial judge in effect resolved the conflict in favor of respondent as to the 45 feet of new boom purchased. The record shows that the respondent used equipment which he kept in excellent condition and that on a prior occasion when a boom was damaged a new one was purchased because three attempts to fix it had failed. Appellant failed to introduce any evidence to reduce the damages, except some testimony that the boom was repairable.

While it is true that in California a bailee for hire is not an insurer (*Homan* v. *Burkhart,* 108 Cal.App. 363 [291 P. 624]), it is provided in section 1928 of the Civil Code that "The hirer of a thing must use ordinary care for its preservation in safety and in good condition." And section 1929 provides that "The Hirer of a thing must repair all deteriorations or injuries thereto occasioned by his want of ordinary care."

We are satisfied that the instant case was one in which there was a conflict in the evidence as to the issues of negligence and damages, which conflict it was the duty of the trial court to resolve. We are satisfied also that the trial court's conclusions that the damage to the crane was attributable to the negligence of appellant and that the respondent was thereby damaged in the amount of the judgment awarded finds ample support in the record.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.