[S. F. No. 4534. In Bank. December 22, 1908.]

CHARLES BONE, as Administrator of the Estate of Charles Main, Deceased, (substituted as Plaintiff in place of Charles Main), Appellant, v. MARY A. HAYES, as Executrix of the Will of Thomas R. Hayes, Deceased, (substituted as Defendant in place of Thomas R. Hayes), MARY A. HAYES, as Administratrix with the Will Annexed of C. E. Hayes, Deceased, (substituted for Thomas R. Hayes, as Executor of the Will of C. E. Hayes, Deceased), and STANDARD PORTLAND CEMENT COMPANY (a Corporation), Respondents.

CORPORATIONS.—ACTION TO COMPEL TRANSFER OF STOCK—GIST OF COMPLAINT—AGENCY TO PURCHASE BONDS—BONUS OF STOCK—TRUST—REVIEW OF EVIDENCE UPON APPEAL.—When the gist of the complaint in an action to enforce a transfer of stock in a corporation, is that the defendant purchased bonds thereof as agent for plaintiff with his money, and received from the sellers, in consideration of the purchase, a bonus of shares of stock, for which he did not account to the principal, but had the same issued to himself, the complaint shows him chargeable therewith as a trustee, and tenders material issues, upon which the sufficiency of the evidence to support the findings may be reviewed upon appeal from an order denying a new trial to the plaintiff.

ID.—SUFFICIENCY OF COMPLAINT AS TO INVOLUNTARY TRUSTEE WITH NOTICE IMMATERIAL.—The complaint being sufficient, and the sufficiency of the evidence to support the findings reviewable as against

the agent as trustee, neither the sufficiency of the complaint nor
any defects of form therein as against an involuntary trustee,
charged as purchaser of part of the stock from the agent with
notice, is material to be considered upon the appeal.

ID.—FINDING UNSUPPORTED—SHARES NOT DELIVERED AS BONUS—PRIMA
FACIE EVIDENCE—ABSENCE OF EXPLANATION—PRESUMPTION.—*Held*,
that the finding that the shares were not delivered as a bonus, is
against the evidence when a *prima facie* case is made by proof that
the corporation had set apart a total number of shares of stock, to
be distributed *pro rata* as a bonus to purchasers of each one-thous-
and-dollar bond, and that defendant as agent had purchased for
plaintiff fifteen of such bonds entitling plaintiff *prima facie* to three
hundred shares of the stock as a bonus; and when the defendant
failed to testify or to explain away the nature of transaction. In
such cases the presumption must attach that his evidence if pro-
duced, would be adverse to himself, and would support the plain-
tiff's case, especially when he is charged with improper conduct,
and breach of trust as an agent of the plaintiff, and failed to repel
such charge.

ID.—PROVINCE OF TRIAL COURT, AND OF APPELLATE COURT.—Though it
is the province of the trial court to determine issues of fact, when
there is evidence to support its findings, and the rules applicable
to the failure to produce evidence are primarily for its guidance in
weighing the evidence, yet, when the appellate court must determine
whether a finding of the trial court is without substantial affirma-
tive evidence to support it, it may on reading the evidence with a
view to ascertain its sufficiency be guided by the law for measuring
the effect of the production or withholding of evidence.

ID.—PRESUMPTIONS AGAINST TRUSTEE FAILING TO ACCOUNT OR TO
INFORM BENEFICIARY.—Trustees are under an obligation to render
to their beneficiaries a full account of all their dealings with the
trust estate and when there has been a negligent failure to keep
true accounts or a refusal to account, all presumptions will be
against the trustee upon a settlement. The denial that the agent as
trustee had received any bonus of shares of stock, was not a com-
pliance with his obligation to give his beneficiary satisfactory in-
formation of his dealings with the trust estate.

ID.—ADMISSIBILITY OF EVIDENCE TO SHOW STOCK BONUS.—In deter-
mining the question whether there was a stock bonus attached to the
sale of bonds, evidence is admissible, after showing that the bonds
issued were disposed of according to a certain plan or method, to
show the terms in which bonds had been sold to other purchasers.

ID.—DISCRETION OF COURT.—While ordinarily evidence that a certain
contract was made with A is not admissible to show that a similar
contract was made with B, yet, when the circumstances indicate a
strong probability that the course followed in one instance would
be followed in others, evidence of such course in one instance, may
be allowed in the discretion of the court.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Joseph M. Nougues, M. J. Waldheimer, and George W. Towle, Jr., for Appellant.

W. J. Bartnett, Marcel E. Cerf, and Charles W. Slack, for Respondents.

SLOSS, J.—This action was begun by Charles Main against Thomas R. Hayes, individually and as executor of the will of C. E. Hayes, deceased, to compel the transfer to plaintiff of three hundred shares of the stock of Standard Portland Cement Company, issued to Thomas R. Hayes, and a like number, issued to C. E. Hayes.   The cement company was made a party defendant for the purpose of preventing a transfer of the stock pending the litigation.

Plaintiff's amended complaint contained three counts.   The first alleged that on September 29, 1902, the defendant Thomas R. Hayes, acting as plaintiff's agent purchased for plaintiff fifteen bonds of the Standard Portland Cement Company, of the par value of one thousand dollars each.   In consideration of the purchase, which is alleged to have been made with moneys of plaintiff to the amount of fifteen thousand dollars theretofore intrusted to Thomas R. Hayes, a bonus of three hundred shares of the capital stock of the Standard Portland Cement Company was delivered by the sellers of the bonds, but not as a gift or gratuity to Thomas R. Hayes or to C. E. Hayes, his son.   Both Thomas R. and C. E. Hayes knew that payment for the bonds was made with the moneys of Main. Thomas R. Hayes accounted to plaintiff for the bonds, but never accounted for or delivered to him the three hundred shares of stock.   It is alleged that without the knowledge or consent of plaintiff, Thomas R. Hayes had two hundred of the three hundred shares issued and delivered to himself, the other one hundred shares being, by the direction of C. E. Hayes, issued and delivered to said C. E. Hayes.   On the death of C. E. Hayes, Thomas R. Hayes became executor of his will.   He has

refused to comply with plaintiff's demands upon him, individually, that he turn over the two hundred shares issued to him, and as executor, that he turn over the one hundred shares issued to his son, C. E. Hayes.

The second and third counts are of the same general character, being based upon similar transactions occurring at different times. The second alleges a purchase of five bonds on October 4, 1902, and the receipt of a bonus of two hundred shares of stock, one hundred shares being issued to Thomas R. Hayes, and one hundred to C. E. Hayes. The third sets forth a purchase of five bonds, and the issuance of one hundred shares of stock to C. E. Hayes. The transaction relied on in this count took place in January, 1903.

The defendants filed separate answers, raising issues as to most of the material allegations of the complaint. The court found that the purchases of bonds, as alleged in the complaint, had been made by Thomas R. Hayes as agent of plaintiff and with plaintiff's money intrusted to him, and that C. E. Hayes knew that payment for the bonds had been so made. It found that Thomas R. Hayes had, at the times alleged by plaintiff, caused to be issued and delivered to himself, various certificates aggregating three hundred shares of stock of the cement company, and that C. E. Hayes had likewise had issued to himself certificates for three hundred shares. It was found, however, that said shares of stock were not delivered by the sellers of the bonds in consideration of the purchase of the bonds or as a bonus to Thomas R. Hayes or to C. E. Hayes. Upon these findings judgment was entered in favor of defendants. The plaintiff appealed from an order denying his motion for a new trial. Since the taking of this appeal, both Main and Thomas R. Hayes have died, and personal representatives have been substituted for them as parties plaintiff and defendant respectively.

The points urged by appellant on this appeal are, 1. That the evidence was insufficient to justify the findings in favor of defendant; and, 2. That the court erred in excluding certain evidence offered by plaintiff.

The respondents object to a consideration of the evidence on the ground that the amended complaint was not sufficient to entitle the plaintiff to relief against any of the defendants. In making this objection, they recognize the well-settled rule

that, on an appeal from an order denying a new trial, the appellate court may consider only such matters "as are made grounds upon which the superior court is authorized to grant or deny the motion." (*Green* v. *Duvergey,* 146 Cal. 379, [80 Pac. 234] ; *Crescent Feather Co.* v. *United Upholsterers' Union,* 153 Cal. 433, [95 Pac. 871], and cases cited.) The erroneous overruling of a demurrer to the complaint is not one of those matters. It is argued, however, that insufficiency of the evidence to sustain a finding will be ground for reversal only where the finding relates to a material issue (*McCourtney* v. *Fortune,* 57 Cal. 619; *Brison* v. *Brison,* 90 Cal. 323, [27 Pac. 186]), and that the failure to state a cause of action may be looked into to determine whether the pleading tendered any material issue upon which a finding was required. If the rule precluding, on an appeal from an order denying a new trial, a review of the rulings upon demurrer be regarded as subject to this modification, it is plain that the amended complaint here cannot be said to be wanting in averment of facts showing a liability on the part, at least, of Thomas R. Hayes. The gist of the claim against this defendant is that he, purchasing bonds as agent for Main, and with Main's money, received from the sellers, in consideration of the purchase, a bonus of shares of stock, and that he did not account to his principal for these shares. If he did so receive the stock, he was, on elementary principles, chargeable with it as trustee. (Civ. Code, secs. 2219, 2229.) Whether enough is alleged to impose on C. E. Hayes an obligation toward Main as involuntary trustee of trust property taken with notice of its character is of no consequence in this connection. Upon a new trial, leave to amend the complaint may, if deemed necessary, be granted. But a cause of action being set forth as against one defendant, neither its insufficiency as against another, nor any defects of form, can be considered on this appeal.

Did the evidence justify the finding that the shares coming to Thomas R. and C. E. Hayes were not received by the former as a bonus on the bond purchase? The plaintiff showed, at the trial, through the testimony of Thomas R. Hayes himself, that said Hayes, on September 29, 1902, purchased for Main fifteen bonds of the Standard Portland Cement Company, and paid for the same by two checks for ten thousand dollars and five thousand dollars, respectively, each made payable to the

order of C. E. Hayes, and signed "Charles Main, by Hayes." These checks were signed by Thomas R. Hayes as Main's agent. On October 4, 1902, there was a similar purchase of five bonds, and on January 8, 1903, a third, of five bonds. These were paid for by checks, one for five thousand dollars, and the other for $5056.66, both signed "Charles Main, by Hayes," and payable to the order of the Standard Portland Cement Company. Judge F. W. Henshaw, one of the directors of the cement company, testified that the corporation had authorized an issue of five hundred one-thousand-dollar bonds. The issue was "underwritten" by William G. Henshaw and W. J. Dingee; that is, Henshaw and Dingee bought the bonds and guaranteed their sale. With the bonds they received from the cement company ten thousand shares of the stock of the corporation, on the understanding that this stock, or so much thereof as might be needed, was to be given to purchasers of bonds as a bonus to induce the purchase, at the ratio of not more than twenty shares of stock to each one-thousand-dollar bond. Any stock not so used was to be returned to the treasury of the corporation. None was in fact returned.

It appeared that Mr. Dingee was absent at the time of the sale of these bonds to Thomas R. Hayes. Mr. W. G. Henshaw, who had personal knowledge of the transaction, was out of the jurisdiction at the time of the trial, and his testimony had not been taken. All that plaintiff could offer, in addition to what has been stated regarding the general method adopted by the corporation in disposing of its bonds, and the showing that Thomas R. Hayes had purchased bonds for plaintiff, was evidence of the receipt of shares of stock by Thomas R. and C. E. Hayes. In this connection it was made to appear that on September 29, 1902, two certificates for one hundred shares each were issued to Thomas R. Hayes, and one for one hundred shares to C. E. Hayes; on October 4, 1902, one hundred shares to Thomas R. and one hundred to C. E. Hayes; on January 9, 1903, one hundred shares to C. E. Hayes. Each of these issues, except the last, occurred upon the very day upon which Thomas R. Hayes had drawn a check in payment for bonds bought by him for Main. The last issue of stock was dated one day after the payment for bonds. The number of shares issued to Thomas R. and C. E. Hayes on September 29, 1902, (i. e., three hundred) was in the ratio of twenty shares

to each bond purchased on that date. So of the shares issued
in January, 1903.

The defendants offered no testimony, but submitted the case
on the showing made by plaintiff. Here we have an agent or
trustee purchasing bonds for his principal. Three separate
purchases are made. The bonds are held for sale by parties
who have been furnished with shares of stock to be given as a
bonus, or part consideration, to persons who may purchase the
bonds. On each of the three occasions upon which purchases
are made for his principal by the agent, we find an issue of
stock, corresponding, at least in two cases, to the amount of
the bonus which the sellers were authorized to give, made to
the agent, or to his son, who had knowledge of the agency.
That, upon a consideration of all these circumstances, a court
or jury would have been justified in drawing the inference
that the stock had been given to Thomas R. Hayes as a bonus
accompanying the purchase of bonds for his principal can
hardly be questioned. And the probability that the fact was
as is claimed by plaintiff is immeasurably strengthened by the
failure of Thomas R. Hayes, who was present at the trial, to
testify in his own behalf. A *prima facie* case having been
made against him, it would have been a simple matter for him
to explain the exact nature of the transaction, if there was any
possible explanation consistent with a due execution of his
trust. "It is a well-settled rule that when the evidence tends
to prove a material fact which imposes a liability on a party,
and he has it in his power to produce evidence which from its
very nature must overthrow the case made against him if it is
not founded on fact, and he refuses to produce such evidence,
the presumption arises that the evidence, if produced, would
operate to his prejudice, and support the case of his ad-
versary." (Code Civ. Proc., sec. 2061, sub. 7; *Missouri etc.
Ry. Co.* v. *Elliott,* 102 Fed. 96, 102; *Hostetter Co.* v. *Gal-
lagher Stores,* 142 Fed. 208; *Neilson* v. *Betts,* (L. R.) 5 H. L. 1,
20; *Goodwin* v. *McGehee,* 15 Ala. 232; *Jeffrey* v. *United Order
etc.,* 97 Me. 176, [53 Atl. 1102]; *Smith* v. *Whitman,* 6 Allen,
(Mass.) 562; *Ernst* v. *Crosby,* 140 N. Y. 364, [35 N. E. 603].)
This principle applies with, perhaps, greater force where a
party charged with conduct which is apparently suspicious or
dishonorable has an opportunity to explain it, but fails to do
so. (1 Moore on Facts, 566; *Bryant* v. *Fink,* 75 Iowa, 516,

[39 N. W. 820]; *Whitney* v. *Rose,* 43 Mich. 27, [4 N. W. 557]; *Montgomery* v. *Beecher,* (N. J.) 31 Atl. 451; *N. Y. etc. Ferry Co.* v. *Moore,* 102 N. Y. 667, [6 N. E. 293]; *Nelson* v. *New York,* 131 N. Y. 4, [29 N. E. 814]; *McConkey* v. *Cocker,* 69 Md. 286, [14 Atl. 465].) "Silence under such circumstances," says the court of appeals of Maryland in *Keller* v. *Gill,* 92 Md. 190, [48 Atl. 69], "is little less than a formal confession of guilt, and a court of equity cannot be expected to say that the charges are unfounded or that the evidence is untrue, when there is nothing in the record to refute either and when the parties charged with the fraud have failed to repel it by their own testimony." It is no doubt true that these are primarily rules to guide the jury or the trial court in passing, in the first instance, on the issues of fact. This court is not, on appeal, to make an original finding on any such issue. The conclusions on controverted matters of fact reached in the court below must stand here, unless we can say, as matter of law, that they are without substantial support in the evidence. But, in reading the evidence with a view to ascertaining its sufficiency, this court, like the trial court, must necessarily be guided by the means furnished by the law for measuring the effect of the production or withholding of certain evidence.

In addition to what we have said, it is to be noted that Thomas R. Hayes was a trustee for Main, and that he is here sought to be charged with the proceeds of the property (money) intrusted to him. The plaintiff asserts that certain shares of stock received by Hayes were a part of such proceeds. Trustees are under an obligation to render to their beneficiaries a full account of all their dealings with the trust fund. (3 Pomeroy's Equity Jurisprudence, sec. 1063; 28 Am. & Eng. Ency. of Law, 2d ed., p. 1076), and where there has been a negligent failure to keep true accounts, or a refusal to account, all presumptions will be against the trustee upon a settlement. (*Lupton* v. *White,* 15 Ves. (Eng.) 432, 440; *Blauvelt* v. *Ackerman,* 23 N. J. Eq. 495; *Landis* v. *Scott,* 32 Pa. St. 495.) Here there was nothing in the nature of an accounting beyond the bare denial by Thomas R. Hayes, before the commencement of the action and again in his answer, that he had received any bonus. This was not a compliance with his obligation, which was to give to his beneficiary complete and satisfactory information of his dealings with the

trust estate. (2 Beach on Trusts, sec. 522; *In re Fish,* (1893) 2 Ch. 413, 426; *Ottley* v. *Gilby,* 8 Beav. (Eng.) 602.)

Upon the whole case, we are satisfied that the evidence produced by plaintiff tended so directly to show an improper use, by Thomas R. Hayes, of his fiduciary powers, that, in the absence of any explanation from him, the finding that he had not violated his duty is without substantial support. The only reasonable conclusion that can be drawn from the facts appearing in this record is that Hayes, charged with the obligation of investing Main's funds, so contrived as to obtain for himself a secret profit which could and should have been obtained for his principal. Although the burden of proof be upon the plaintiff, a court of equity should not, in order to save the defendant from liability, strain the evidence in order to find a possible ground of exculpation, where the accused trustee has not seen fit to suggest one.

These views necessitate the reversal of the order appealed from. Of the alleged errors of law, it will be sufficient, for the purposes of a new trial, to say that, in support of the contention that the sale of bonds to Hayes carried a stock bonus, it would be proper, after a showing that all of the bonds issued were disposed of according to a certain plan or method, to admit testimony regarding the terms on which bonds had been sold to other purchasers. While, ordinarily, evidence that a certain contract was made with A, is not admissible to show that a similar contract was made with B, it has repeatedly been held that such evidence may, in the discretion of the court, be allowed, where the circumstances indicate a strong probability that the course followed in one instance would be followed in others. (1 Wigmore on Evidence, sec. 377 and cases cited; *Moody* v. *Peirano,* 4 Cal. App. 411, [88 Pac. 380].)

The order denying a new trial is reversed.

Angellotti, J., Shaw, J., Lorigan, J., and Beatty, C. J., concurred.