[L. A. No. 14065.   In Bank.—June 26, 1933.]

NICK CHUTUK et al., Appellants, v. SOUTHERN CALI-
FORNIA GAS COMPANY (a Corporation), et al.,
Respondents.

Earl E. Howard and Albert J. Sherer for Appellants.

T. J. Reynolds, L. T. Rice and R. R. Blackburn for Respondents.

Sullivan, Roche, Johnson & Barry, as *Amici Curiae* in Support of Appellants.

Thomas J. Straub, Clinton S. Stanley, Paul Overton and Neil G. Locke, as *Amici Curiae* in Support of Respondents.

THE COURT.—After further consideration of this appeal, we are of the opinion that the District Court of Appeal arrived at the correct conclusion in its decision of the case. At the time, the petition for a transfer was before us, we were somewhat impressed by the statement of petitioner that the service pipe and riser were on the land of the plaintiffs and, therefore, the doctrine of *res ipsa loquitur* might not apply. There is some conflict in the evidence as to the correct location of said pipe-line and riser. But conceding that they were located on plaintiffs' land, still they belonged to and were the property of the gas company, and the gas company had complete charge and control of them. Not only would the gas company be liable for any damage proximately arising out of the negligent manner in which they were left after they were disconnected with plaintiffs' building, but the company having the exclusive ownership and control of the service pipe and riser was in duty bound to explain the cause of any explosion that might be caused from gas escaping from said service pipe.

The opinion of the District Court of Appeal is, therefore, adopted by us as the opinion of this court. It was written by Mr. Justice Houser, concurred in by the other members of said court, and is as follows:

"The plaintiffs were the owners of a frame building, one side of which was adjacent to the property line of the lot upon which the building was located. Several years preceding the date when the plaintiffs became the owners of said property, at the instance and request of the then owner thereof, the defendant Southern California Gas Company (hereinafter designated the defendant), which was engaged in the business of furnishing gas to the public generally, installed a service gas pipe from its gas main in the public street to the premises of such owner, and thereupon and thereafter by such means furnished gas to said owner for his use. At a later date, which also preceded the acquisition of the property by the plaintiffs, the gas service of the then owner was discontinued and, with the exception of the service pipe which had been installed and was owned by the defendant, all gas pipes were removed from the premises. The service pipe 'was located one foot east of the property line', which placed it just outside of the plaintiffs' building and property and within a few inches thereof. In discontinuing the service of the gas the defendant caused to be capped the riser which extended perpendicularly from the service pipe above the surface of the soil for about four inches. The building was constructed 'about six inches . . . above the ground surface'. At no time did the plaintiffs have knowledge either of the location or of the existence of either the service pipe or the capped riser. Between the side of the building that was adjacent to the property line and the curb line of the street was a space of ten or twelve feet upon which a night watchman employed by the plaintiffs sometimes parked his automobile. Early in the evening of a certain day, which was several months subsequent to the date on which the plaintiffs became the owners of the premises, a boy with whom the watchman was conversing at the time, threw a burning match upon the ground near the place where the capped riser was located, and thereupon an explosion of accumulated gas occurred underneath the building, which was followed by a fire that resulted in a damage to the building, stipulated by the parties hereto to amount to the sum of $1500. Thereafter, in an action brought by the plaintiffs against the defendant, the trial court denied to the plaintiffs any right of recovery against the defendant,

but rendered judgment in favor of the latter. It is from such judgment that the instant appeal is prosecuted.

"In the leading case of *Judson* v. *Giant Powder Co.*, 107 Cal. 549 [40 Pac. 1020, 48 Am. St. Rep. 146, 29 L. R. A. 718], the principle of law known as '*res ipsa loquitur*' was applied to a situation somewhat similar to that portrayed by the facts herein—since which time the rule therein announced has been generally recognized and followed by the courts of this state. (See 19 Cal. Jur. 704 et seq.; *Willard* v. *Valley Gas & Fuel Co.*, 171 Cal. 9 [151 Pac. 286]; Id., 180 Cal. 561 [182 Pac. 32]; *Phoenix Assurance Co.* v. *Texas Holding Co.*, 81 Cal. App. 61 [252 Pac. 1082]; and especially *Smith* v. *Southern Counties Gas Co.*, 89 Cal. App. 81 [264 Pac. 532].)

"In the instant case it appears that since 'the thing which caused the injury' was shown to have been under the management of the defendant, and that the accident was such 'as in the ordinary course of things does not happen if those who have the management use proper care'—in the absence of explanation by the defendant, it may properly be inferred that the accident arose from its want of care. In other words, in the situation as hereinbefore has been set forth, without further evidence on the part of the defendant, a *prima facie* case of negligence on the part of the defendant was established; and the plaintiffs were entitled to a judgment in their favor, unless it further appeared that, by substantial evidence introduced in behalf of the defendant, the trial court was authorized to conclude that the defendant was not negligent in the premises. (See authorities cited, *supra*.)

"In substance, all the facts in evidence which in any manner even tended to warrant a surmise that the defendant had not been negligent, or that the accident was directly attributable to the negligence of either of the plaintiffs, or of some other person, were the location of the riser on the service pipe, which was shown to have been outside the property of the plaintiffs and a few inches from their building; that after the explosion and the fire the connecting threads between the riser and the service pipe were found to have been cracked; the possibility that on some indefinite and uncertain date the watchman may have driven his automobile upon or over said service pipe; that

no complaints of leaks in the service pipe had ever been registered with the defendant; that the average life of gas pipes in the locality in which the one in question was located far exceeded the length of time that the particular service pipe and riser had been in use; and that, although no evidence was introduced to the effect that said service pipe and riser at any time had ever been inspected by any person, it did appear that the defendant had employed a man in 'every district . . . looking for these leaks'.

██ ''It is clear that because of the nature and the dangerous qualities of the gas, the defendant was required to use great care in its management and control. Considering the fact that the defendant simply capped the riser, rather than adopt a safer measure for its protection against liability for injuries or damages which might arise from 'these leaks'—especially in view of the fact that neither the service pipe nor the riser was located on the property of the plaintiffs, and that the latter neither had assumed to have any management or control of either the service pipe or the riser—in the absence of any substantial evidence in its defense, the responsibility of the defendant in the premises approaches a certainty. ██ The mere possibility that the watchman may have driven his automobile over, or upon, or against the riser, and thus have caused the leakage of the gas, amounts to nothing more than a conjecture. For aught that appears, the breaking of the connecting threads between the service pipe and the riser may have resulted from any one or more of many different conditions which may have been present. If complaints had been made and no attention had been paid to them, such a fact might constitute additional evidence of the negligence of the defendant; but the fact that no complaints had ever been made relative to the situation would have no tendency to prove affirmatively that care had been exercised on the part of the defendant. And the same principle would apply with reference to the average length of the life of the gas pipe. If its age limit had expired, that fact might well be an item tending to show lack of care; but because the pipe was generally still in good, serviceable condition has no tendency to prove that in the circumstances present herein the defendant was not guilty of negligence. As to the inspection of the service pipe and the riser in question,

the evidence merely shows that the defendant employed a man in 'every district' whose business was 'to look after these leaks'. No evidence was presented to the effect that he had ever inspected this particular service pipe and riser. But even if it might be surmised that he had done so, the evidence contains no information as to the date when such inspection occurred—whether within a day, a week, a month, or even a year preceding the explosion and the fire. In determining the possible legal effect of such evidence as it was intended to bear upon the ultimate fact of either the care of the defendant or the lack thereof by some other person in the premises, this court is impressed with the suggestions made by the appellants in their brief herein with reference thereto, to-wit: 'We assert that such evidence falls far short of being substantial, and, in fact, is barely pertinent under the issue. True, we can speculate, or guess, that the watchman ran into the pipe, causing the damage. We can guess that, because of its break in the thread, something may have run over it. We might possibly hazard a guess that some time after installation, the gas company district man may have inspected for leaks. We can guess, because the average life of the gas pipe is from ten to fifteen years, that at all times this pipe was in perfect condition. But such speculative indulgences do not present substantial evidence so as to create a conflict justifying the finding of the trial court, . . . ' In the opinion of this court, the inference of negligence of the defendant, which arose from the application of the rule of *res ipsa loquitur*', was not met by any substantial evidence which was introduced in behalf of the defendant."

The judgment is reversed.

Mr. Justice Langdon, deeming himself disqualified, does not participate in the decision.