[Civ. No. 15854.   First Dist., Div. Two.   June 3, 1954.]

FRANCES TINSLEY, Appellant, v. ALEXANDER BAUER, Respondent.

Joseph A. Brown and Charles O. Morgan, Jr., for Appellant.

Philip S. Ehrlich, Albert A. Axelrod, Fred Leuenberger and R. J. Hecht for Respondent.

NOURSE, P. J.—This case and the related case, *Tinsley* v. *Bauer*, Civil No. 15784 [*post*, p. 724, 271 P.2d 116], were consolidated on appeal for argument in accordance with a stipulation of the parties. The subject matter of the two appeals is, however, so distinct that they can better be treated separately.

Mrs. Tinsley, a former bookkeeper in the employ of defendant Bauer (who does business under the firm name of Bauer Cooperage Company), instituted an action in three counts based on three separate oral agreements: the first on an agreement of June 15, 1950, to pay for her services one-half of one

per cent of the net sales of Bauer Cooperage Company over and above the $125 per week regular salary she received, which additional compensation was not paid from January 1 to 19, 1951. This count was amended to change the date of the agreement to July 12, 1950, and the percentage to one per cent; second, an agreement of March 10, 1950, to pay her $5,000 for services to be rendered during defendant's illness in caring for his treatment, personal and business affairs, of which agreed amount, $2,500 only was alleged to have been paid; third, an agreement of December 23, 1950, to pay her an extra compensation of $2,000 if, notwithstanding her serious illness which required the service of nurses, she would render her services for defendant's business. Defendant's answer denied the conclusion of any of the three alleged agreements and with respect to the last two added as a special defense that at the alleged time of these agreements, if he had entered into them, he was to the knowledge of plaintiff unable to properly manage his affairs and to understand or to enter into said agreements, by reason of weakness of mind, memory and understanding. To the answer was added a cross-complaint for money received in the sum of $15,971.50, amended on the face of the pleading to $21,735.85.

The court, sitting without a jury, found in substance that plaintiff had failed to prove by a preponderance of the evidence the allegations of any of her three causes of action and that therefore the court did not make findings as to defendant's special defense. On the cross-complaint the court found for cross-complainant in the amount claimed and further that cross-defendant as bookkeeper had control over the petty cash of cross-complainant's business, and that it was her duty to account for money so received and disbursed by her; that this was done at the end of each week by vouchers presented by cross-defendant of all amounts of petty cash paid out by her, which were supported by additional invoices, receipts or vouchers for such expenditures, the total amount being reimbursed to her in one check; that in the two years prior to the commencement of the action, cross-defendant embezzled the amount claimed by presenting fictitious vouchers which did not represent any purchases for said business as they purported to do. The judgment was for defendant and cross-complainant and plaintiff and cross-defendant appeals. Her only contention is that the findings are not supported by the evidence.

The evidence shows that beginning early in 1950 defendant

Bauer was suffering from a serious depression which required hospitalization in a sanitarium from May 10 to June 24, and from July 19 to November 14, 1950. Even when then discharged after 27 shock treatments he was still not quite well. In his depressed condition defendant, according to expert witnesses, was not able to carry on ordinary business affairs, his decisions would be influenced by his depression and it was possible that he could be taken advantage of. Mrs. Tinsley during this illness gave some of the personal assistance which normally would have been given by Mr. Bauer's wife, with whom there were marital difficulties. She assisted in arranging for medical care, in choosing the sanitarium, renewing his personal notes, depositing his dividend checks, etc.

During the second half of 1950 she received over and above her weekly salary of $125 sizable amounts in checks signed by defendant Bauer or by his relative A. Craus, who was the superior of Mrs. Tinsley in the business and who, in the absence of Mr. Bauer, was in charge. The checks comprised a payroll check of $2,000 signed by Bauer on July 12, 1950, and explained by plaintiff as half of the amount of $5,000 claimed by her in Count II, after deduction for income tax; several payroll checks of different amounts and dates signed mostly by Mr. Craus and explained by Mrs. Tinsley as relating to one-half of one per cent of the net sales of the company until the end of 1950, minus tax deductions; a payroll check of $3,000 signed by Mr. Bauer dated December 31, 1950, for costs of Mrs. Tinsley's illness in the last part of 1950. All these checks were entered on the payroll and declared as taxable income by Mrs. Tinsley. They are not directly involved in this action. On December 30, 1950, Mr. Bauer also signed a commercial check (not a payroll check) of $250 which will be mentioned later with respect to the cross-complaint.

Mrs. Tinsley distinguishes on appeal between the first count of her action as to which she concedes that there exists a substantial conflict in the evidence and the other two counts as to which she contends that her evidence is substantially uncontradicted. There is no good ground for such a distinction. Mrs. Tinsley testified in detail to the making of the three agreements alleged by her, the circumstances under which they were allegedly made and the services which she rendered under them. As to the first and second agreements, both she and her husband testified that the promise to pay her the second one-half of one per cent of the sales and the second half of the amount of $5,000 before the end of the year was

repeated by Mr. Bauer at a dinner given by them for Mr. Bauer in the end of November, 1950. With respect to the third count there was also some such additional evidence. However, as to all three counts there was evidence which caused a conflict. Mr. Axelrod, the attorney of Mr. Bauer, testified that he was present at the conference on January 19, 1951, in which the employment of Mrs. Tinsley was terminated. She refused to work for her salary of $125 per week only, if one-half of one per cent of the sales was not added. When the employment ended for that reason, Mr. Axelrod asked her how much was owing to her and she answered her salary and one-half of one per cent of the sales over the last two weeks. To his question whether there was anything else owing to her she answered "no." Mr. Bauer as a witness expressly denied he promised to pay her $5,000 as alleged, or the alleged one per cent of the sales. He remembered the dinner party but made no statement there that he owed plaintiff anything. Neither did he offer her $2,000 for work of closing the books over 1950. She offered to do it but he had it taken care of by the accountant. He remembered giving her the check of $3,000; she then wanted also a bonus of $2,000 and when he would not give her the bonus "that is where the trouble came in." The accountant, Mr. Sackett, testified to the work he did on ledgers and statements at that time, which had been otherwise done by the bookkeeper. Appellant attributes much importance to the fact that respondent could not give an explanation of his check of $2,000 of July 12, 1950. However, respondent testified that his memory as to what happened in 1950 was impaired and that he made "forced deals," that she obtained money by telling him how much she needed and calling for sympathy. If this were believed, the point does not have any conclusive importance. The fact that respondent gave appellant certain amounts does not disprove his testimony that he did not promise her more than she actually obtained from him. The conflicting evidence rule, recognized by appellant, and too well known to require citation of authority, is clearly applicable to the denial of all three counts of appellant's action. As appellant wishes this court to reject the evidence of defendant Bauer, evidently believed by the trial court, we may cite our recent opinion in *Evje* v. *Title Ins. Co.*, 120 Cal.App.2d 488, 492 [261 P.2d 279], which clearly holds that we cannot so do even if the testimony is much more unbelievable than in the case now before us.

With respect to the embezzlement found as the basis

for the judgment on the cross-complaint, the accountant Sackett testified that he examined the petty cash vouchers for the years 1950 and 1949, those of 1950 about February, 1951, those of 1949 just before the trial (April, 1952). The vouchers were enclosed in envelopes, each week's vouchers stapled together. The envelopes were for each month. When the envelopes were opened and the vouchers examined some had supporting data or were signed for receipt, others had neither a signature nor an attachment. Of the latter there were two kinds: some stated, e.g., 50 drums at $100 and the amount of $50, without supporting data or signature; the others said "Drums, see attached," followed by an amount but there was no attachment. A list of the latter kind prepared by the accountant from all vouchers of 1950 showed a total of $14,071.80. A list of the same kind for 1949 totalled $4,864.35. All these slips were in the handwriting of appellant. Two lists of the slips of the first kind in amounts of $25 or $50 each also made by the accountant showed a total of $1,900 for 1950 and of $900 for the year 1949. During the months August, September and October, 1949, in which appellant was on vacation there were no unsupported vouchers of either kind. Neither were there such withdrawal slips in 1950 after November 28, 1950, when appellant became sick. Mrs. Tinsley admitted that the slips of $25 and $50 did not represent purchases of merchandise but withdrawals in her own behalf. She withdrew $25 a week until May 5, 1950, and from then on $50 a week. The withdrawal of $25 a week had been authorized by Mr. Bauer late in 1948 and later increased to $50 a week as a compensation for the fact that her working for his company forced her to have a housekeeper. She deposited these amounts in a special savings account to keep a record of them. They were not entered on the payroll. "That was the way Mr. Bauer handled things." She did not report the amounts as income. On December 31, 1950, Mr. Bauer gave her a commercial check (not a payroll check) of $250 for the five weeks she had not had the $50 per week from the petty cash because of her illness. Like the regular withdrawals this was not entered on the payroll. In her deposition she had said that she did not remember whether Mr. Bauer had authorized her to take $25 a week out of the petty cash during 1949, but she testified that at that time she was confused. Mr. Bauer testified that he did not know of these withdrawals and never gave her any

authority to make them. He did not remember what the check of $250 was for; something she demanded under threat similar to the manner in which she obtained the $3000 for medical expenses. It may seem rather improbable that a bookkeeper who wishes to embezzle would take an equal amount every week and put it in a special account, thus inviting detection, and the check of $250, not a payroll check when the other amounts given were all payroll checks fits well into appellant's theory, but such circumstances are only part of the conflict existing between the evidence of the parties, which is for the trier of facts. The trial judge believed respondent's testimony, and again it is not for this court to reject it. (*Evje* v. *City Title Ins. Co., supra.*)

Appellant has applied for leave to produce in this court three allegedly newly discovered witnesses, among whom Dolores Jones, who would testify in substance that Mr. Bauer told them that he permitted appellant to make certain withdrawals from the petty cash for the purpose of paying said Dolores Jones for services in caring for appellant's child. In *Estate of Schluttig,* 36 Cal.2d 416, 423 [224 P.2d 695], it was said: "The procedure authorized by section 956a of the Code of Civil Procedure is not a substitute for a motion for a new trial upon the basis of newly discovered evidence." It was also held in that case, relying on *Tupman* v. *Haberkern,* 208 Cal. 256 [280 P. 970], that additional evidence cannot be received on appeal for the purpose of reversing the judgment appealed from, if such evidence, if received, would not compel a reversal of the judgment with directions to the trial court. If the evidence offered in this case were received there would still remain the conflict with the testimony of Mr. Bauer, believed by the trial court, and this court could not direct a judgment for appellant on this point. The request must therefore be denied.

With respect to the other kind of petty cash slips without supporting vouchers, cross-defendant did not admit that they represented withdrawals made by her for her own use. She testified that the weekly summaries with petty cash slips and vouchers were presented to either Mr. Bauer or Mr. Craus for signature and verification, that then the papers would not be stapled together and that they would examine them individually before signing the check to reimburse the petty cash. There were not always supporting vouchers attached. Mr. Bauer denied that the vouchers were given to him for examination. He was only given the check to sign.

The vouchers were kept by Mrs. Tinsley in her safe, to which no one else had access; she had the key. However, most petty cash checks were signed by Mr. Craus. Mr. Craus was not heard as a witness. On cross-examination Mr. Sackett conceded that the listed slips which had no vouchers attached all had staple holes in them, and some even had staples so that something could have been attached and torn off.

Appellant points out two serious defects in this evidence. No showing was made or attempted that all vouchers and attachments were in the same condition at the time the accountant examined them as when appellant parted with them or that the sizable quantity of drums represented by the slips without vouchers, or any drums, were missing from the stock of the firm. She contends that therefore there is no substantial evidence of embezzlement, especially when the presumption of absence of crime and fraud is considered.

█ It is also pointed out that appellant was bonded and no claim for the amounts allegedly embezzled was made on the bond, but the weight of this fact as against respondent was solely for the trier of fact and cannot be reviewed by us.

Respondent points out two additional circumstances which the trial court could consider. In 1950 Mrs. Tinsley and her husband deposited abnormally high amounts in bank accounts. Over and above some deposits in other accounts, they made deposits in their commercial account at the Third and Palou Office of the American Trust Company, concededly totaling some $30,000. In that year their combined gross income according to income tax returns was $19,508, of which $14,362 was income of Mrs. Tinsley from respondent. Their income over 1949 was a little over $9,000 of which $4,550 came from respondent. Although part of the deposits were explained as derived from earlier sources (an opening deposit of nearly $5,000 transferred from an earlier bank account; earlier loans to an amount of $4,850; sale of stock $2,886, and amounts transferred from a deposit box in which she had accumulated several thousand dollars) for several sizable deposits no explanation was given. There is, however, no showing that any specific amount of an unsupported petty cash slip appeared as a deposit in any of appellant's accounts.

The second point is that appellant, although she testified in rebuttal, did not take any definite position as to the petty cash slips in her handwriting without supporting vouchers. She did not testify that supporting vouchers had been at-

tached, although she so intimated, or that they represented actual purchases. Earlier on cross-examination her testimony had been to the effect that vouchers were not always attached and that Mr. Bauer sometimes charged moneys to merchandise although it was not for merchandise purchased. She did not at any time expressly testify that she did not take for herself any other amount from the petty cash than the regular weekly amounts she admitted.

This second point has no separate significance on appeal. ■ It is true that the failure of a defendant to produce evidence explaining circumstances of importance in the case, if such evidence is available to him (either by his own testimony or otherwise) will justify an inference or even cause a presumption to arise, that the evidence, if produced, would operate to his prejudice. (*Bone* v. *Hayes*, 154 Cal. 759, 765 [99 P. 172]; *Perry* v. *Paladini, Inc.*, 89 Cal.App. 275, 281-282 [264 P. 580]; *Leenders* v. *California Hawaiian etc. Corp.*, 59 Cal.App.2d 752, 758 [139 P.2d 987].) This principle applies even with special force if the circumstances to be explained points to dishonorable conduct of defendant. (*Bone* v. *Hayes, supra.*) However, no unfavorable inference may be drawn from such failure of the defendant to produce evidence in rebuttal until a prima facie case has been made by the plaintiff. (*Girvetz* v. *Boys' Market, Inc.*, 91 Cal.App.2d 827, 830 [206 P.2d 6] and see *People* v. *Ashley*, 42 Cal.2d 246, 269 [267 P.2d 271].) ■ The essential question is therefore whether a prima facie case of embezzlement was made by the evidence of the absence of the supporting vouchers from certain of appellant's petty cash slips (without proof that they had not been there when appellant parted with the slips and without proof that any of the drums ostensibly bought in the transactions to which these slips related were missing) together with the evidence of suspiciously large deposits in appellant's and her husband's bank accounts during a year as to which some vouchers were missing.

In criminal cases "there is no doubt that evidence tending to show that the defendant had no money before a larceny and considerable money after is admissible, since evidence of a sudden and unexplained possession of means about the time the larceny was committed has the tendency to connect the defendant with the crime where there are other circumstances to support it. This is generally true although the source of the money is not definitely traced or identified by the prosecution." (32 Am.Jur. 1040; see also Ann. 123 A.L.R.

119; *People* v. *Kelly,* 132 Cal. 430 [64 P. 563].) In *Commonwealth* v. *Mulrey,* 170 Mass. 103 [49 N.E. 91] a criminal prosecution for obtaining money by false pretenses, the facts of which have some resemblance to those respondent contends to be present here, the court held that evidence of deposits of money during the period of the alleged crimes of an amount much too large to be accounted for by defendant's salary "properly was admitted in connection with independent evidence tending to show a successful fraudulent conspiracy," although the evidence of said deposits "by itself, of course, did not prove criminal conduct." In the case before us there is, because of the two flaws in respondent's evidence pointed out before, no independent evidence fully showing any embezzlement of funds from respondent's business. The suspiciously large deposits must not only serve to connect appellant with embezzlements independently shown, as is the normal function of such evidence, but they must also serve to prove that embezzlements have been committed. No inference to that effect can be drawn from them. Such conclusion can be based on conjecture and suspicion only, which are insufficient to overcome the presumptions against fraud and crime. (*Trousdell* v. *Equitable Life Assur. Soc.,* 55 Cal. App.2d 74, 76 [130 P.2d 173].) We conclude that respondent with regard to the takings not admitted by appellant did not make out a prima facie case.

Although indebtedness and embezzlement in one total amount of $21,735.85 was found, the evidence makes it clear that this amount is the sum of the amounts of the petty cash slips which refer to vouchers not found by the accountant, totaling, according to his statements, $14,071.80 in 1950 and $4,864.35 in 1949 and the withdrawals admitted by appellant in the total amount of $2,800, with an unexplained deviation of $0.30 in favor of appellant to which the rule "de minimis" applies. We will therefore affirm the judgment on the cross-complaint to the amount of $2,800 and reverse it in so far as it awards respondent more.

The judgment on plaintiff's complaint is affirmed. In so far as the judgment is based on defendant's cross-complaint it is affirmed as to the admitted withdrawals by cross-defendant in the sum of $2,800. As to the other portions of the judgment on the cross-complaint, it is reversed for the sole purpose of determining what further sum, if any, was illegally taken by the appellant and what further sum is now

due under the cross-complaint. Appellant's request for findings and application for leave to produce additional evidence are denied. Both parties to bear their own costs.

Judgment affirmed and reversed accordingly.

Dooling, J., and Bray, J.,* concurred.

*Assigned by Chairman of Judicial Council.